Your Honor, this case is on Docket 2-15-0016, Illinois Casualty Company, Plaintiff Appellee v. Wellington Homes, Inc., individually and on behalf of all others civilly situated. Arguing on behalf of the defendants' appellants, Attorney Mr. David M. Oppenheim. Arguing on behalf of the plaintiff's attorneys, Attorney Mr. Thomas J. Costello. Thank you. Mr. Oppenheim. Thank you, Your Honor, for the case to the court. This is a duty to defend case. There's an underlying lawsuit that's still ongoing for which Illinois Casualty is, at the moment, providing a defense. And so it's governed by the bedrock principles of when an insurer has an obligation to defend a case. And these are things that this court actually just issued a decision in September called SOTO v. Country Mutual, I think, authored by Justice Jorgensen. And the key, as explained by that court, was that where there are uncertainties, that means there is a duty to defend. What's the uncertainty here? Well, first of all, there is the ambiguity in the policy language, which we discussed in the briefing. And secondly, there is the uncertainty factually about what the sum total of claims involved in the underlying action here are. And I'd like to address both of them. In the opinion, I note that this court mentioned that there could be three types of uncertainties, factual, interpretive, and legal. And I'm talking about the first two. There's a duty to defend, obviously, if there's any single claim within a larger lawsuit that is covered or significantly potentially covered. And, of course, to make that analysis, this court construes the complaint liberally and the policy liberally, such that as long as there's any potential that it's a covered claim, there's a duty. And the coverage grants are construed broadly, exclusions narrowly, with ambiguities construed in favor of coverage. The underlying complaint, and there's no dispute about this, has three distinct legal theories that play into all those class actions. They're all based upon the faxes, right? They are all based upon unsolicited faxes. And the trial court, in its memorandum of opinion, in reversing its earlier decision, said consideration of the underlying complaint establishes that the faxes and conduct of violation of the TCPA form the basis of the conversion and the IFCA counts as well. Is that inaccurate? It is inaccurate, as stated, in that not all of the faxes, as alleged in the complaint, are alleged to violate the TCPA. And also, moreover, in this case, with the exclusion that we are dealing with in this case, it doesn't matter. Because the exclusion here is not the exclusion that this court considered in GM signed v. State Farm. It's pretty close, though. Well, there are some words missing, and they're pretty important words. Directly or indirectly? No, directly or indirectly, I think, are not the important ones, although they are definitely missing. The acts or omissions are missing. What's excluded here, and I will quote, are liability or legal obligation arising out of, and then there's a list of statutes or descriptions of statutes, one of which is the TCPA. The only liability arising out of the TCPA is the prescribed damages under the TCPA. The only legal obligation of the TCPA, or any other statute for that matter, is what's defined in the statute. It really doesn't matter whether or not the same conduct that would give you the claim under the statute. What's the size of the class?  I'm not sure that we know this yet. I don't have it at my fingertips. I suspect it's probably in the thousands. So, and how many pages were faxed? Again, I would, I think we're dealing with a one-page fax, so, or at least the one we know about that was sent to the name dealer. Are you talking about 12 reams of paper? What's that? We're talking about 12 reams of paper. It's possible. Again, the underlying case is still ongoing. But at the end of the day, the duty to defend doesn't turn on the value of the covered claim. As long as there's any covered claim, no matter how small, there is a duty to defend. And we're not talking about a duty to indemnify here. There's no judgment. At that point, we would know, okay, like in GM versus State Farm, the whole thing was TCPA violations, and the whole thing was assessed at the statutory damages. That's not what we're dealing with. We're dealing with an open question here with these three claims. And the only exclusion that anybody's brought to the court's attention is this laws exclusion, which only applies to liability arising out of the statute. So I think that the issue can be resolved without going any further than that to say that, well, we have legal bases somewhere other than one of the statutes listed in the laws exclusion, and therefore the exclusion doesn't apply to them. You say in your brief that GM signed versus Shane and GM signed versus State Farm, the holdings are inconsistent. I do. We pointed out in the 2014 GM signed versus State Farm that it was not inconsistent with the earlier decision. The language that you rely upon is not a holding of this court. We said in that case State Farm had refused to tender defense by relying on the explicit TCPA exclusion. In Shane's insurance policy, GM signed, filed an amended complaint, which potentially brought the claim within the insurance policy. However, the amended complaint was filed after a settlement had been reached. That's exactly right. And we also said factually, in that case, factually GM signed, admitted they amended the complaint for the purposes of pleading possible coverage. Isn't it disingenuous to suggest that this comment about a claim being potentially within the policy is a holding when it's really we were setting out what the facts of the case were? It was a notice in due diligence, not a coverage case. Well, right, but the standard of whether due diligence was met had to do with when the potential for coverage arose, when the claims were potentially brought into coverage. And I guess I just am missing how potentially- Did you read the entire opinion? Because we said in the 2014 GM signed case that it's not inconsistent with GM signed versus Shane. And I guess, Your Honor, respectfully I disagree. You must have missed that when you read it. No, I read it and I just disagree. Because- You disagree with Justice Sienoff and I was a panelist on that case. I do. And I guess what it comes down to is whatever the context, whatever the reason that the court said it, the court said that the amended complaint brought the claims potentially within the coverage. But that was what you had alleged, what was alleged that it was potentially. That's not a holding of the court. That's- I think I was on that panel and my recollection was that there was no determination as to whether or not it was or wasn't within insurance coverage. The issue was whether or not there was diligence on the part of the insurance company to come in and attempt to mediate its liability. And one of the factors was is that in a way it was ambushed because it was led to believe that there wasn't coverage. And then after they say that there's no coverage, you entered into or somebody entered into a settlement agreement and then filed an amended complaint that potentially, allegedly potentially, would have brought it within coverage. And then they are then served with this and told they should have had a duty to defend when they weren't given notice that there was anything that was on file that would have given them a duty to defend. And so how can you be lacking in diligence if you are totally ignorant because the opposing side hasn't sent you amended pleadings to give you notice that potentially or otherwise there's a cause of action that might have coverage. That's what that case was all about. Okay, but. And you can disagree with me if you want, you know, but that's what. And obviously there's a little percentage in people in my position disagreeing with people in your position, Your Honor. But in the Shane case, and not to belabor it, they were sent the amended pleading. What they weren't sent was notice that the settlement had happened beforehand, which was kind of the unique circumstance. And I think that that, and it may not have, but I think that may have colored the decision because ultimately there, the decision was, well, there's no duty to defend based on these potentialities of faxes that don't meet the TCPA standard for what is an advertisement or faxes that were sent to somebody with whom there's an established business relationship. Meaning in either event that the faxes, those subset of the faxes wouldn't be TCPA violations, that the court didn't need to worry about that because the parameters of that case had been already defined by the settlement, which the insurer, of course, know about. But that's not what we're dealing with here. But nevertheless, what we said in Jamstein, the 2014 opinion, refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not potentially fall within the policy's coverage. You would agree that's an accurate statement of law? I'm sorry. That's an accurate statement of law, that refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not potentially fall within the policy's coverage. That's absolutely correct, Your Honor. So it's not inconsistent with anything you're arguing? No. In fact, I think that that supports our argument that nothing here in these pleadings makes it clear that all of the claims fall within the exclusion in the Illinois casualty policy, either because, as discussed by definition, all of the claims for conversion and for consumer fraud don't fall within this exclusion, or because there is the potential that we have some of these faxes for which the defined parameters of the TCPA don't reach them. And the two examples that I've come up with are ones where the content doesn't meet the content of advertising as defined by the statute and regulations. Well, the policy exclusion is not limited to just the TCPA, though, correct? It says, or other similar language here. Other similar statutes. Other similar statutes. That's right, Your Honor. So it's intended to cover a variety of potential activities stemming from the nature of the violations of the TCPA, correct? I don't think that's right.  How do you interpret the term similar, then? Well, I think, first of all, you need to look at the policy as a whole and the exclusion as a whole. It's got a list. Well, it's titled laws. And then it's got a list of different statutes, statutory claims that are excluded, anti-discrimination claims, workers' compensation claims, unemployment claims, migrant worker claims. And then you get to the TCPA. And then finally, at the end, there is a catch-all that says, any similar statutes, ordinances, orders, directives, or regulations. So, in other words, I think that what the catch-all brings in are kind of maybe state analogs or federal analogs to the things that are described. But in no way does it bring in, say, a common law claim like conversion. It doesn't say common law claims. Common law claims of conversion based upon the same activity that is covered by the TCPA. Right. So it's the same theory, same facts, different theory. Right. And Illinois Casualty could have put in an exclusion, like State Farm did, that is based on the conduct, based on the facts. They didn't. They put in an exclusion that is explicitly based on the theory. So if somebody writes an exclusion that says, we really, really, really, really mean this, and someone comes along and just says, we really mean this, one is definitely not within the potential coverage, but the other one could be within potential coverage. I'm not sure. I think you'd have to define this in your hypothetical. How about defining really? Based upon your argument so far, it would seem to me that consumer fraud, being a statute, would also be excluded under the language that you cited, wouldn't it? It would turn on whether it is considered to be similar in nature to any of the statutes listed in the list of excluded statutes. Yes. But isn't the linchpin of whether it's similar or not is whether it's based on the same conduct? I don't know. When you're talking about whether one statute is similar to another, I think it's based on the legislative goals. Let me just get back to what we started with a minute ago with Justice McClernand and Justice Jorgensen's questions. Common sense. Underlying conduct is what is aimed at. And when you're drafting an insurance policy and exclusions, you are aiming to identify the conduct. The policy exclusions are directed toward the conduct of the insured, not the theories of recovery that some lawyer might come up with to get around the exclusion. It's directed at the conduct that is intended to be covered, isn't it? Well, that may be true. It doesn't make sense. In the business community, insurers, you're getting an automobile policy. You want your newly purchased vehicles covered. You ask for that in the policy. Well, that may be true in many cases, but what the law says is that the insurers who have the pen and can draft their policies and their exclusions any way they want are held to a strict reading of what they put in their exclusions. So in addition to statutes, ordinances, orders, et cetera, they need to put in other theories of common law recovery. I think that would be right. So that they would have been fine. I think that's probably true. Thank you. You'll have an opportunity to make rebuttal. Thank you, Your Honor. Mr. Costello. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court. I feel like this is a statistical anomaly. Maybe the first time we've seen this in Illinois jurisprudence. I'm the only one in the room that's new to this set of facts and legal issues here. It's rare enough that we get a situation where there's an appellate case that's this on point to the situation at bar. But this really should be an easy decision because it's the exact same case that this Court already decided in GM signed versus state filed. What about counsel's argument that the language of the exclusion policies are different? Your Honor, the language of the exclusion that matters is exactly the same to the language in the State Farm exclusion that this Court analyzed in the State Farm case. It's the language that you're arising out of. The additional words that opposing counsel has focused on to find any distinction between this case and State Farm don't make any difference to the analysis in State Farm. And it's just mere surplusage when you look at how does the exclusion apply to this identical underlying complaint. This is an underlying complaint that has been filed many times over. And Your Honors are well aware, I'm sure you've seen this at least twice already, where it's a strategic decision to try to find a way to state a claim that could potentially lead to a gotcha scenario against an insurer for millions of dollars. But they're trying to find a way almost to induce an insurer into looking at their exclusion and the complaints. And this seems pretty clear. And not file a declaratory judgment action. That's not what happened here. We did file a declaratory action. And to preserve these issues and avoid the situation that State Farm found itself in in that case until such a time as an appellate court could rule on the application of this exclusion to this type of a complaint. But really this is the same in every meaningful respect. Because the underlying complaints filed by the same underlying plaintiff's attorney, opposing counsel that's here today, it's got the same three counts, all of which incorporate and are based upon the same alleged facts, F-A-X, as the TCPA count. And in addition, this is one area in which Justice Burkett, Justice Jorgensen, I know you're going to know better than I can necessarily read between the lines on this. But in reviewing the State Farm decision, it seems that the version of the complaint that was at issue that had been amended in the midst of the settlement was a little more cleaned up strategically with respect to what allegations were incorporated into the conversion count than they had gotten to in this case. It seems that the complaint at issue in State Farm only incorporated the fact of the beat of the facts. It didn't incorporate any of the allegations about it marketing goods or services, about it being an advertisement, about it being unsolicited, without permission, or anything like that. When you look at the third amended complaint that is at issue at this point in this case, they incorporated all of the factual allegations from the general allegations section about those facts, or that fact sent in May of 2006, including the fact that it was marketing the goods and services. And it's specifically including the fact that it didn't include an opt-out clause in violation of the Code of Federal Regulations section that basically enforces the TCPA. That was specifically incorporated into the conversion count as one of the foundational allegations. And with respect to the argument that the allegations… Are you suggesting that conversion doesn't require an opting out? Your Honor, honestly, I'm not sure if it does on its own. I know in this case the allegations are that all of the facts that they're claiming supported the conversion count. Mark, what I'm suggesting to you is, does conversion as a matter of law have as an affirmative defense an allegation that there was, in fact, notification, a sentence or two, with a little box that says mark this if you want to opt out? That supposedly, if it's attached to anything, will supposedly result in an affirmative defense and a denial of judgment for conversion? Sure. I would sure raise that as an affirmative defense. But I'll tell you this. It wouldn't be controlled by the 49 CFR, I think it was 1200, which was the allegation that they cited and then incorporated into the conversion count here. So there is absolutely no reasonable question that the same faxes that form the basis of the TCPA claim and count are the exact same as those that form the basis of the conversion and consumer fraud counts. You acknowledge that if there's any doubt at all about coverage, it's to be resolved in favor of the insured. You don't dispute that? No. Actually, the State Farm decision addressed that completely consistently with every other decision that Wellington Homes has cited as the strange side of bedrock coverage decisions here. Everything was absolutely correct, including with respect to the application of the arising out of language of how that's to be construed. They've argued that there should be some bright-line test, the but-for, the but-for analysis that the court used in State Farm is inappropriate when you're talking about an exclusion. But then they cite the cases like Dare that cite and turn to Northbrook where they did use that analysis in terms of an exclusion. In that regard, really what's going on here is we have one argument that finds some distinction without any deference about extra verbiage that's in this exclusion, which is further undercut by the fact that they cite in their appendix and argue in their brief that Travelers and State Poly, believe it or not, the two insurers, they provide the court with examples of exclusions that they say would apply and cover all three counts. Neither of those are anything like what you have in the State Farm policy or the ICC policy. One of those doesn't even include the arising out of language. So on the one hand, they're saying that, well, this is an incredible and game-changing distinction that it doesn't have directly or indirectly or the actor I mentioned. But on the other hand, they're saying, well, neither do these, but they work just fine. And when you look at the cases that have sort of led to this evolution of the analysis of these arising out of language in Northbrook and Dare and Oakley, you see that those exclusions have additional verbiage, too, that made no difference. The original decision Northbrook had about an extra paragraph of language on top of the arising out of, the use, maintenance, lending, operation, whatever, of autos. And then the Dare case, I'm sorry, the Oakley case comes in and has an exclusion that just has the bare bones, kind of like arguably what ICC has in their exclusion. And the court didn't find that there was any distinction that made any difference there. The key term here is arising out of. And I think the other important thing to remember is that the argument that Wellington is making here, that arising out of isn't enough, that you have to have the directly or indirectly language, in addition to being completely inconsistent with what this court said in State Farm in the analysis in that case, they're rendering the term arising out of to be completely meaningless by arguing that the exclusion is only intended to encompass liability imposed for a violation of the TCPA. If that's what was intended, that's exactly what it would say. But there's a conscious decision to use this arising out of language because of the fact that that is the way to avoid a 900-page policy and to make it clear that this includes, and the purpose of this is, these policies don't cover these junk facts cases. That's it. They're never honestly probably, going back in history, intended to cover these cases. But until this exclusion, before this exclusion was added, you had cases like Swiderski and Shelburne Associates where courts, and I understand the reasoning, said, well, when you look at it, there's at least a possibility. So the insurance companies responded and said, OK, I don't really think our insurance ever intended this to be included. Let's remove the possibility. And this is the type of exclusion that did that. So because State Farm maybe went through the wringer with this type of a case before ICC did and said, OK, we're going to add additional clarifying language to make it even more clear, the really, really, really, really language, Justice, doesn't make any difference here because the choice of terminology of arising out of clearly encompasses more than specific statutory damages. That's why the language was chosen. Well, the argument here is the exclusion covers statutes, orders, regulations, but doesn't cover common law. Right. Yeah, I disagree with that because, again, the arising out of language encompasses all claims that are based on the same conduct, the same facts. And opposing counsel conceded the point that if you had some additional clarifying language, it would more clearly do that. You don't need that additional clarifying language. Well, I mean, I look at the term orders. Does that include orders of a court? Opinions? Common law opinions? If you're excluding... It could. I mean, all I can say is that it clearly applies to all three counts of the underlying complaint here. But in conversion, it's certainly part of that. Your Honor, this court has already decided that much. And essentially, the other cases that Wellington has cited, including this court's decision in Soto, there's nothing that supports their argument that State Farm wouldn't apply here. All of these cases, including the Tool Works case, are completely different scenarios, different types of policies, different types of claims. Soto involved, and it's an interesting case. It's an interesting question. You know, a CGL policy issued to a pet salon where they have language in the policy implying that there may be coverage for certain personal property, including pets, but then an exclusion that doesn't define personal property. And they say, well, it clearly applies to pets. That is a type of ambiguity that leads even narrowly to a potential for a duty to defend. You don't have any type of ambiguity here. Again, the language isn't ambiguous. It's consistent with all of the Illinois law. And you have to assume or presume that when that language was chosen, it was with the knowledge of that history of jurisprudence and precedent about what arising out of means and encompasses. And the fact of the matter is, if we had an exclusion here that said this applies to bodily injury, property damage, personal and advertising injury arising directly, indirectly, tangentially, or with any connection of any kind to any act or violation alleged to violate, including a complaint filed by Anderson and Wantsa that includes TCPA conversion, consumer fraud and negligence and any other conceivable theory, they may come up with a good attorney. Because they know how to try to plead this stuff. They'd still be saying that it doesn't apply clearly enough. Because that's their only way to try to argue around and wiggle and find some spot or some crack in the shield that State Farm provides. But it's just not there. It really isn't. And, Your Honors, unless you have any other questions for me, this is so clear, I'm not going to belabor the point. You decided this case correctly in State Farm. It's the same case. And because of that, I ask you to please affirm the decision of the lower court granting summary judgment and finding ICCO no duty to defend or indemnify. Thank you. Was it summary or declaratory? I'm sorry? What was the judgment? Was it summary or declaratory? It was a summary. It was a motion to consider, reconsider the summary judgment finding ICCO to duty to defend was granted based on State Farm. So the judge entered summary judgment in ICC's favor, saying no duty to defend was owed. And, of course, because of that, no duty to indemnify was owed. Thank you, Your Honor. Thank you. Thank you, Your Honors. Very briefly, words matter. If the exclusion here was for claims involving dogs, they'd be here arguing that it applies to cats and parrots and pythons and iguanas because somebody might keep them as pets. They didn't define the exclusion in terms of pets. They said dogs. Here they said they could have had an exclusion defined in terms of actions that violate the TCPA. They didn't. They have an exclusion defined only in terms of liability arising out of the TCPA. And, yes, I understand that the phrase arising out of is common to this exclusion as it was to the one in State Farm, as it's common to many, many, many other insurance policy provisions. However, the key is what is it arising out of? There it was arising out of actions. Here it's arising out of a statute. So I think that's the key first point. The key second point is that, and I know that Illinois Casualty is focusing on the fact that we allege that all of the faxes didn't have opt-out notice. But there is nothing in paragraphs 11 through 16 of the underlying complaint, and I brought them up here, that says anything one way or the other about all of the faxes being advertisements as defined by the statutes and the regs, or whether they were all sent to people without established business relationships as defined by the statutes and the regs. Those are the paragraphs that got incorporated into the conversion count. So we're in an Illinois Tool Works territory, a decision that, of course, was discussed at length by this court in Soto, where you have things that aren't clear. You have things that are vague about the complaint. You don't have, like in State Farm, a settlement that predates the complaint defined in the scope of the case. You have the potential that there are faxes that are nonetheless not even TCPA violations. So even if you agree with Illinois Casualty that despite the words they put in their exclusion, that their exclusion could apply to a common law claim, the stuff here doesn't necessarily, the claims here don't necessarily fall within there because you could have things that don't violate the TCPA. With respect to the St. Paul and Travelers exclusions, those are examples of exclusions defined in terms of conduct that are broadly worded to explain to a layperson insured that what's excluded is everything under the sun that could come out of unsolicited communications. We took the position, obviously, in State Farm that the exclusion in that case didn't cut it because it wasn't as clear-cut as St. Paul and Travelers. We lost. The problem Illinois Casualty's got is they've got a different animal entirely. Finally, with respect to Judge Burkett's question about whether orders as written in the catch-all provision of the exclusion could encompass common law claims, I think that even if that were a reasonable reading of that exclusion, it is by no means the only reading, and as long as there's a reasonable reading under which common law claims don't fall within that catch-all provision, then by operation of the rules of contract interpretation, insurance policy interpretation, and the duty to defend, that the exclusion doesn't unambiguously apply in their remains of duty to defend here. So for those reasons, Your Honor, unless you have further questions of me, we urge you to reverse. Has there ever been a case that you're aware of where an unsolicited tax has been found to have been a conversion without also a judgment on the telephone act? In other words, I've been thinking about conversion in the common law sense, and I, well, we actually had a case immediately before you, which you didn't hear, because you weren't here unless you were in the waiting area. You heard it. That was about conversion and what the elements are, and I'm just trying to fathom in my own mind how sending a fax constitutes a conversion. If that constitutes a conversion, then it would seem that a telephone call would constitute a conversion as well because I'm using up your electricity, either in the battery that you charged or cell phone time. In fact, I've supposedly censored data or even a text or whatever, depending on what the rates are with your telephone. I've converted it in some way, shape, or form, assuming that I have a duty that I'm not supposed to be doing that would result in some sort of damages. And frankly, I'm not aware of a duty that says that it's unlawful or improper or a breach of some duty to send a fax to someone outside of this law. I'm sure in common law they didn't have faxes. Because the common law was before the state of Illinois, I think, was founded. The fax machine predates the statute, though. But I do know that we've had to litigate in the context of motions to dismiss the conversion claim in some of the underlying cases, whether the claim can stand and the motions have been denied. In terms of knowing whether there is a case involving conversion with faxes but not involving TCPA claims, I would note that Insurance Corporation v. Shelbourne, which is the 2009 First District case on coverage for faxes, involved, at least as discussed by the First District, conversion and trespass claims as opposed to statutory TCPA claims.  Trespass. But I guess my final response to Your Honor's question is, for coverage purposes, I'm not sure it matters because there is also good bedrock case law that says... Which trespass, out of curiosity? What's that? Which trespass? Aspertitis or to real estate, to the person? Into the office with the fax, right? I would imagine. I mean, I wasn't involved in that case. I've read it, but I think it is just the physical intrusion. Right. But I guess my last point is, the relative merit of the underlying claim doesn't enter into the duty to defend analysis. Even if the complaint, the claim is completely meritless, false, fraudulent, groundless, I think, are phrases that courts have applied in the coverage analysis, it doesn't matter. As long as it's out there, the duty to defend exists. I'm aware of that argument, and I'm also aware of Justice Senos' decision, which some might say suggested that the second and third counts were contrivances. And that led me to start hypothecating about just exactly what proofs would be involved in a cause of action relating to a conversion of a fax machine or a telephone or a text message. Yeah, I mean, I don't think I've ever come across it in the context of a telephone or a text message, but I think in the context of a fax, you'd have to establish that the fax was unwanted, that there was no consent, that it ate up some of your ink and your paper, and that it was, for those reasons, wrongful. Okay. Thank you. Thank you. Court is adjourned.